# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 6:26-CR-02003-CJW-MAR |
| v. | **MOTION FOR DECLARATORY RULING ON THE SUPERVISEE'S RIGHT TO AUTHENTICATE AND AUTHORIZE OFFICERS PRESENTING AT THE RESIDENCE, AND TO ADOPT OR SUBSTITUTE A VERIFICATION PROTOCOL** |
| ERIC CHARLES WELTON, Defendant/Supervisee. | |

## I. Introduction

Defendant Eric Charles Welton, proceeding pro se, respectfully asks the Court to resolve a single, narrow question of law before it becomes the subject of a confrontation at his door: When a person presents at the supervisee's residence claiming to be a law enforcement or probation officer authorized to inspect, search, or otherwise enter, does the supervisee retain the right to confirm (1) that the person is who they claim to be, and (2) that the person holds the specific authority they claim, before admitting them?

The Defendant does not seek to obstruct any officer in the lawful discharge of any duty. He seeks the opposite: a procedure that lets a genuine, authorized officer proceed without friction while exposing an impostor or an officer acting outside the scope of any authorization. A rule that lets anyone holding a badge—or merely claiming one—enter a home on demand is not a feature of supervised release; it is a standing invitation to fraud, and to the kind of escalation that gets people killed.

The Defendant therefore asks the Court, as a threshold matter, to **affirm or deny** the right—that is, to rule whether these two interests, authentication

and authorization, survive the imposition of supervised release. If the Court **affirms** the right, the Defendant proposes the minimal-contact verification protocol set out in Part VI for the Court to **accept or modify**; should the Court find that protocol onerous, the Defendant asks that it substitute its own equivalent procedure sensitive to both components, as described in Part VII. If the Court **denies** the right, the Defendant asks that it say so plainly on the record, so that the scope of what supervision is understood to extinguish is fixed and reviewable rather than left to be litigated at the door.

## II. The Operative Condition Already Requires More Than a Badge

The search condition imposed in this case is not a blanket "open the door to anyone" provision. It authorizes a search of the Defendant's person and property "upon reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the defendant, or by any probation officer in the lawful discharge of the officer's supervision functions."[1]

By its own terms, the condition presupposes a *qualified actor* exercising a *qualified authority*: either an officer acting on reasonable suspicion, or a probation officer acting within the lawful discharge of *supervision* functions. A stranger at the door satisfies neither predicate until two facts are established: that the person is an officer at all (authentication), and that the person's presence falls within the authority the condition contemplates (authorization). The protocol requested here does nothing more than establish, at the threshold, the very predicates the condition already requires. It adds no new substantive limit on the officer; it confirms the limits the Court has already imposed.

---

1. Final Presentence Investigation Report ¶ 68, *United States v. Welton*, No. 5:23-CR-00192-M-RN (E.D.N.C. July 1, 2025) (Doc. 80) (special search condition operative on supervised release in this matter). The condition authorizes search "upon reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the defendant, or by any probation officer in the lawful discharge of the officer's supervision functions."

## III. Authentication and Authorization Are Distinct, and Both Are Necessary

These are two different questions, and conflating them is the source of the danger.

**Authentication** is the verification of identity against a *claimed* identity. The relevant question is not "does this person have a card that says 'Officer'?" but "is this person in fact the individual the card describes?" Private individuals lack any reliable means of distinguishing a genuine credential from a competent forgery; a laminated card, a cloned email domain, or a printed letterhead is trivial to fabricate and impossible for a layperson to disprove by inspection. Meaningful authentication therefore cannot rest on the supervisee's visual judgment of a plastic card. It must rest on something tied to the *issuer*—for identity, a REAL ID-compliant credential whose validity can in principle be confirmed against the issuing authority, because the issuer, not the holder and not the supervisee, is the only party positioned to vouch for it.[2]

**Authorization** is a separate inquiry that uses a *second* credential to confirm that the authenticated person holds the *specific permission* they assert. Establishing that a person is named "John Smith" does not establish that John Smith is currently employed as an officer, is assigned to this case, and is authorized to take the action he proposes to take at the door. Officers are reassigned, suspended, separated, and impersonated. As with authentication, the supervisee has no edge-verification technology capable of confirming current employment or assignment, so authorization too must trace back to the issuer— the employing agency or supervising office that can confirm the person is

---

2. REAL ID Act of 2005, Pub. L. No. 109-13, div. B, 119 Stat. 302 (codified at 49 U.S.C. § 30301 note); 6 C.F.R. pt. 37, subpt. B ("Minimum Documentation, Verification, and Card Issuance Requirements"), including § 37.13 ("Document verification requirements"), https://www.ecfr.gov/current/title-6/chapter-I/part-37 (last visited May 31, 2026). The regulatory scheme rests identity assurance on verification of source documents against the authorities that issued them rather than on a layperson's inspection of the card itself, which illustrates the point made in text: meaningful authentication is an issuer-side function.

presently acting within a granted permission rather than on a stale, revoked, or fabricated one.

The two together answer the only questions that matter at a threshold: *Who are you, and are you actually allowed to do this right now?* Neither alone is sufficient. A real card on the wrong person is an impostor. A real person with no current authority is a trespasser, however sincere.

## IV. A Verification Procedure Cannot Constitute Interference

It is important to be precise about what the requested procedure does and does not do, because the predictable objection is that any verification "interferes" with supervision.

The procedure blocks *nothing* that is legitimate. A genuine, authorized officer passes verification and proceeds. The procedure's only operative effect is on the illegitimate case: it detects the impostor, the officer acting outside any current authorization, or the person whose claimed authority cannot be confirmed. Detecting unlawful or unauthorized action is not interference with lawful action; it is the precondition that separates the two.[3]

A rule that treats verification as interference necessarily treats *non-verification* as a substantive entitlement—that is, it treats the supervisee's inability to tell a real officer from a fake one as something the Government is entitled to exploit. No legitimate supervision interest depends on that. To the contrary, a verification step *protects* the officer: it deescalates the encounter, removes the supervisee's incentive to treat an unverified stranger as a threat, and forecloses the scenario in which a retaliatory or freelancing actor uses the color of authority to molest the supervisee, his family, or his property. The integrity of the law is served, not burdened, when the people invoking it can be shown to actually hold it.

---

3. This distinction—between a procedure that blocks unlawful action and one that blocks lawful action—is the operative line. A verification step that a genuine, authorized officer passes by definition imposes no burden on lawful supervision; its only effect falls on the unauthorized or fraudulent actor.

## V. The Question Presented: Is This Liberty Interest Surrendered by Supervision?

Supervised release restricts liberty; it does not extinguish personhood. The Defendant remains a person within the protection of the law, entitled to the safety of his home and family against private violence and fraud committed under color of authority. The narrow question for the Court is whether the *specific* interest at issue here—the interest in not being compelled to admit an unverified stranger into one's home on the stranger's bare say-so—is among the liberties surrendered as a condition of supervision.

Put concretely: Does supervision mean that any person who displays a badge, or merely claims to represent authority, may thereby enter and search the supervisee's residence, handle his family, and seize his property, with the supervisee legally disabled from first confirming that the person is real and authorized? Or does the ordinary rule of law—under which a person may take reasonable steps to confirm that someone demanding entry to his home is who they claim and is entitled to be there—continue to operate in the Northern District of Iowa?

The Defendant submits that the latter is plainly correct, and that the premise of any contrary view is empirically unsound. Law enforcement officers are not, as a class, more trustworthy than supervisees, nor less prone to violent overreaction; treating a badge as a self-authenticating warrant to enter assumes

a reliability that the record of policing does not support.[4] The Defendant asks the Court to say so, or to explain on the record why it does not.

## VI. Proposed Minimal-Contact Verification Protocol

The Defendant proposes the following protocol, designed around three principles: (1) minimal physical contact between the parties before verification is complete; (2) verification that runs through the issuer rather than through the supervisee's untrained inspection of a card; and (3) no requirement that either party peer across a distance to scrutinize plastic credentials, because both sides must reasonably regard the other as potentially armed and must not be required to close distance or expose themselves to do so.

1. **Announcement at a distance.** The officer announces presence, name, agency, and the action proposed, from a safe distance, without either party approaching the other.

2. **Issuer-side identity confirmation (authentication).** Identity is confirmed against the issuer, not by visual inspection. The preferred mechanism is a REAL ID-compliant credential whose particulars can be relayed and confirmed against the issuing authority. Where the supervisee or a designated third party (e.g., counsel, or a duty line at the supervising

---

4. The premise that a displayed badge is a sufficient warrant to enter assumes that the class of badge-holders is reliably trustworthy. That premise is contradicted by documented impersonation of federal officers. An FBI bulletin reported in October 2025 described criminals impersonating federal agents—wearing agency-marked clothing and identifying themselves as officers—who committed robberies, kidnappings, and sexual assaults against victims, including at residences, prompting the FBI to urge local departments to review their identification protocols. *See* Fox News, *FBI warns of criminals impersonating ICE agents to rob, kidnap victims* (Apr. 2025, updated 2025), https://www.foxnews.com/us/fbi-warns-crooks-posing-ice-terrorize-communities-former-agent-explains-red-flags (reporting the FBI bulletin; a retired FBI Special Agent quoted in the article advises checking *both* badge and photo credentials—i.e., the same dual-component verification urged here). *See also* FBI Chicago, *FBI Chicago Seeks Information and Warns Public About Individuals Impersonating Federal Agents* (Feb. 2026), https://www.fbi.gov/contact-us/field-offices/chicago/news/fbi-chicago-seeks-information-and-warns-public-about-individuals-impersonating-federal-agents. The Defendant cites these not to disparage officers as a class, but to establish that "badge equals trust" is an empirical claim the record does not support, and therefore cannot bear the weight of extinguishing a verification right.

office) can place a contemporaneous call to the issuing or employing authority to confirm the named individual, that call supplies authentication without physical exchange.

3. **Issuer-side authority confirmation (authorization).** Through the same issuer channel, the supervisee confirms that the named, authenticated individual is presently employed, assigned to this matter, and authorized to take the specific action proposed. This is the step that detects a real person acting without current authority.

4. **Physical credential exchange, if needed, by placement—not by approach.** If a physical credential must be examined, it is placed by the officer at a neutral point and retrieved by the supervisee after the officer has stepped back, and vice versa, so that no party is required to come within reach of another while either remains unverified. Cards are exchanged by physical hand-off conducted to minimize pre-authorization proximity, never by one party peering at a card held by the other.

5. **Clearance and entry.** Once both authentication and authorization are confirmed, the officer is cleared and proceeds with the lawful action without further delay. The supervisee's obligation to permit the lawful search or visit attaches at that point and is not diminished by the verification that preceded it.

6. **Failure or refusal to verify.** If the person presenting declines to permit issuer-side confirmation of identity or authority, that refusal is itself the signal the protocol exists to surface, and the supervisee may decline entry pending confirmation, while promptly notifying the supervising officer and, if appropriate, the Court.

This protocol delays nothing for a genuine officer beyond the minutes required to confirm what the officer can readily confirm, and it costs an impostor everything.

## VII. Alternative Relief

If the Court finds the proposed protocol onerous, the Defendant respectfully requests that the Court not simply deny verification altogether, but instead outline its own equivalent procedure—one that expressly accounts for *both* components, authentication and authorization, and that recognizes that law enforcement is not empirically more trustworthy, or less prone to violent overreaction, than the supervisee it visits. Any equivalent procedure that preserves the supervisee's ability to confirm identity and current authority through the issuer, while permitting a verified officer to proceed, would satisfy the Defendant's concern.

## VIII. Conclusion

The Defendant asks the Court to **affirm or deny** the right to authenticate and to authorize an officer presenting at his residence—that is, to rule whether that right survives the imposition of supervised release. If the Court **affirms** the right, the Defendant proposes the protocol in Part VI for the Court to accept or modify, or, in the alternative, asks the Court to substitute an equivalent procedure under Part VII. If the Court **denies** the right, the Defendant asks that the denial be stated plainly on the record. Affirming this right and approving a verification procedure takes nothing from any officer acting lawfully and within current authority; it protects the safety of the supervisee, his family, and his property, and it preserves the integrity of the law by ensuring that those who invoke its authority in fact possess it.

---

**Note Regarding Signature:** Wet ink signature is not available. Bremer County Jail is blocking Defendant's access to the courts and to litigation materials. A 42 U.S.C. § 1983 action (Iowa case CVCV-007260) has been filed seeking injunctive relief to restore court access. Until that action prevails, Defendant's ability to execute documents is compromised.

Dated: 25 June, 2026

Respectfully submitted,

**ERIC CHARLES WELTON**, Pro Se
51M3
Wiang Tai
Amphur Pai
Maehongson 58130
Thailand

Temporary Residence (For Supervision Purposes):
412 Meadow Lane
Charles City, IA 50616
Email: ewelton.general@gmail.com



# UNITED STATES POSTAL SERVICE ®

# PRIORITY® MAIL

PRIORITY MAIL POSTAGE REQUIRED

how2recycle.info PLASTIC BAG

■ Expected delivery date specified for domestic use.

■ Domestic shipments include $100 o...

■ USPS Tracking® service included fo...

■ Limited international insurance.**

■ When used internationally, a custo...

*Insurance does not cover certain items. For... Mail Manual at *http://pe.usps.com.*

** See International Mail Manual at *http://pe...*

**MAILING ENVE**
FOR DOMESTIC AND INTER

PRESS FIRMLY TO SEAL



This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14 © U.S. Postal Service; July 2022; All rights reserved.

UNITED STATES POSTAL SERVICE.

**Retail**



**P**

US POSTAGE PAID
**$14.95**
Origin: 50616
06/25/26
1815660916-10

6.25.26
EB

PRIORITY MAIL®

4 Lb 6.40 Oz

**RDC 03**

EXPECTED DELIVERY DAY: 06/29/26

SHIP TO:

C002

STE 12
111 7TH AVE SE
CEDAR RAPIDS IA 52401-2103



USPS TRACKING® #

9505 5120 1036 6176 0599 20



To schedule free Package Pick... scan the QR code.

USPS.COM/PICKUP

**FROM:**

ERIC CHARLES WELTON
412 MEADOW LN
CHARLES CITY, IA 50616

~~RECEIVED US MARSHALS SERVICE~~

**TO:**

CLERK OF COURT
NORTHERN DIST OF IOWA
111 SEVENTH AVENUE SE #12
CEDAR RAPIDS, IA 52401

**TRACKED ▪ INSURED**



PS0000013310...
OD: 15 x 11.625

**VISIT US AT USPS.COM®**
ORDER FREE SUPPLIES ONLINE

DuPont™ Tyvek® Protect What's Inside.™