RECEIVED
OCT 13 2026
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*v.*<br><br>ERIC CHARLES WELTON,<br>Defendant. | No. 6:26-CR-02003-SMR-SBJ<br><br>**DEFENDANT'S MOTION FOR ADJUDICATION OF THE LAWFULNESS OF THE APRIL 9, 2025 CELL-PHONE MANDATE, RENEWING THE QUESTION PRESENTED IN D.E. 18 (AS AMENDED IN D.E. 42) AND IN EDNC D.E. 136, AND TO COMPEL A RULING THEREON** |

## QUESTION PRESENTED

**Did any statute, or any order of any court, authorize United States Probation Officer Henry Ponton's April 9, 2025 directive that the defendant obtain and maintain, at his own expense, a cellular telephone and private cellular service contract?**

The question admits of two answers. If the answer is yes, the defendant respectfully requests that the Court's order identify the specific statute or court order that conferred the authority. If the answer is no, the defendant requests the findings set out in Part VIII. If the Court concludes it cannot presently reach the question — whether because of the pending appeal or on any other ground — the defendant requests that the order state that ground expressly, and, as to the pending appeal, requests an indicative ruling under Federal Rule of Criminal Procedure 37(a)(3).

## I. INTRODUCTION AND RELIEF REQUESTED

Defendant Eric Charles Welton, proceeding pro se, respectfully moves this Court to adjudicate the question presented above. He seeks that adjudication by

two complementary routes, so that no procedural accident of docketing or amendment can again leave the question undecided:

**First**, he moves the Court to **rule on the merits of D.E. 18, as amended by the amended motion carried in D.E. 42 (Attachment A)** — the motion concerning the requirement imposed by EDNC Probation Officer Henry Ponton on April 9, 2025. That motion has been pending and unadjudicated since February 2026. No court — not this district, and not the sentencing district — has ever ruled on whether a probation officer had authority to impose that requirement.

**Second**, and independently, he **renews and presents the authority question in this motion itself** (Part III, below). The sentencing court denied the identical question *without prejudice* precisely because this district now holds supervisory jurisdiction (EDNC D.E. 138); a without-prejudice denial contemplates re-presentation in the proper forum, and this is that re-presentation. Whatever the Court concludes about the procedural status of D.E. 18 — superseded, narrowed, mislabeled, or moot — the question is squarely pending in this district as of this filing, and a ruling on this motion is a ruling on it.

The defendant does not ask the Court to decide the question in his favor as the price of deciding it at all. He asks the Court to **decide it** — yes or no, with the source of any authority identified — so that a question twice properly presented is no longer left in procedural limbo. A court's duty is not only to confine itself to its jurisdiction but to "exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943); accord *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 661–662 (1978). "There can be no doubt that, where a district court persistently and without reason refuses to adjudicate a case properly before it," appellate mandamus lies to require a ruling. *Will*, 437 U.S. at 662. The defendant invokes that principle here at the district-court level: he asks this Court to exercise the authority that D.E. 45 declined to exercise, before any resort to the court of appeals becomes necessary.

## II. FACTUAL BACKGROUND

### A. The Ponton requirement and its asserted lack of authority

On April 9, 2025, when the defendant was released from pretrial detention, EDNC Probation Officer Henry Ponton directed that the defendant must obtain a cellular telephone to maintain contact with the U.S. Probation Office. The only written basis for the requirement is Officer Ponton's handwritten notation on the GPS Location Monitoring Program Participant Agreement (PROB 61B): "Must have a cellular phone to maintain contact w/ USPO." That form is Exhibit J to D.E. 18 itself. The notation is telling in its placement: the PROB 61B form recites that GPS location monitoring was imposed "as ordered by the court, as a condition of my release," and the cell-phone requirement appears nowhere among the form's printed conditions — it is a handwritten addition by the officer to a form whose actual court-ordered condition was monitoring, not phone possession. (D.E. 18, Ex. J.) No court ordered the phone requirement. The EDNC Order Setting Conditions of Release (EDNC D.E. 76) and the Judgment (EDNC D.E. 109) each contain **no** cell-phone condition.

The statutory framework leaves no gap in which officer-created conditions can live. The April 9, 2025 directive was issued at the defendant's release pending sentencing, which is governed by 18 U.S.C. § 3143: the "judicial officer shall order the release of the person in accordance with section 3142(b) or (c)." 18 U.S.C. § 3143(a)(1). Section 3142(c), in turn, vests condition-setting exclusively in the court: release is "subject to the least restrictive further condition, or combination of conditions, that *such judicial officer* determines will reasonably assure" appearance and safety, § 3142(c)(1)(B) (emphasis added), including any catch-all condition under § 3142(c)(1)(B)(xiv) — which is likewise a condition "the judicial officer" imposes. And when circumstances change mid-release, the statute says who may act: "**The judicial officer may at any time amend the order to impose additional or different conditions of release.**" § 3142(c)(3). The pretrial-services statute gives officers the complementary, non-judicial functions: to "[s]upervise persons released into its custody under this chapter," 18 U.S.C. § 3154(3), and to "[a]ssist persons released under this

chapter in securing any necessary employment, medical, legal, or social services," § 3154(7). Supervising and assisting are not imposing. An officer's directive that a releasee enter and personally fund an ongoing private telecommunications contract is, in substance, the imposition of an "additional . . . condition[] of release" — an act § 3142(c)(3) reserves to "[t]he judicial officer."

This Circuit's delegation doctrine runs the same way. "[C]onditions delegating limited authority to non-judicial officials such as probation officers are permissible so long as the delegating judicial officer retains and exercises ultimate responsibility," and the controlling inquiry is "whether the court abdicated its ultimate authority." *United States v. Durham*, 618 F.3d 921, 933 (8th Cir. 2010); *see United States v. Johnson*, 773 F.3d 962, 964 (8th Cir. 2014) (quoting same). Where a probation officer, "as opposed to the court, would retain and exercise ultimate responsibility" over a condition, the condition is an impermissible delegation of a judicial function. *United States v. Kent*, 209 F.3d 1073, 1079 (8th Cir. 2000). The supervised-release duties statute confirms the same division of labor: 18 U.S.C. § 3603 authorizes a probation officer to "instruct" a supervisee "as to the conditions specified by the sentencing court" and to "perform any other duty that the court may designate" — authority that "is limited by the probation officer's status as a nonjudicial officer," because "the imposition of punishment is a judicial function reserved to the courts under Article III." *Kent*, 209 F.3d at 1078 (citing *Ex parte United States*, 242 U.S. 27, 41-42 (1916)). A requirement that *originated solely* with a probation officer, that no judicial officer ever imposed, reviewed, or ratified, is the limiting case of that doctrine: in *Kent* and *Durham* the court had at least imposed the condition and the question was how much implementation could be delegated; here there was no delegation to police because no court ever imposed any phone condition at all.

The complete conditions list of the release order confirms there is no source to be found in EDNC D.E. 76 either. The order imposes the AO 199A standard conditions (1)-(5) and a set of checked AO 199B conditions; **it**

**contains no general "follow the instructions of the supervising officer" or "report as directed" condition at all.** The only candidates it offers are these, and each fails:

- **Condition (7)(a)** requires the defendant to "submit to supervision by and report for supervision to the U.S. Probation Office." Submitting to and reporting for supervision is presenting oneself to be supervised; it is not a grant of power to the officer to impose new affirmative purchase obligations. The order's one true reporting directive — condition (s), requiring the defendant to "report as soon as possible, to the pretrial services or supervising officer, every contact with law enforcement personnel" — shows that when the court meant to specify a reporting duty, it specified it.
- **Condition (q)(i)** requires "[l]ocation monitoring technology as directed by the pretrial services or supervising officer." That is a delegation to *select the location-monitoring technology* — and on April 9, 2025, the technology selected was the court-ordered GPS ankle monitor, attached that day under the very PROB 61B form Officer Ponton annotated. (D.E. 18, Ex. J.) The handwritten mandate, by its own terms, was not a selection of monitoring technology: it required a phone "to maintain contact w/ USPO" — a *contact* requirement, not a monitoring technology. Nor was a phone needed to support the selected technology: on the defendant's personal knowledge of the device attached to him, the GPS unit had no cell-phone requirement of any kind and carried built-in audio capability of its own — the unit could be used to communicate without any participant-owned phone. The officer's actual stated rationale confirms the disconnect: Officer Ponton justified the phone as needed "to ensure electricity access for charging the ankle monitor" — a non sequitur (cell phones also require electricity for charging), on a form whose own condition 6 already required the defendant to maintain electrical service at his residence. (D.E. 18 & Ex. J.) And a delegation to choose among monitoring technologies is not a power to compel the supervisee to purchase and maintain a private commercial

service: when the court meant to allocate monitoring costs to the defendant, it did so expressly, in condition (r) (cost of location monitoring). A cellular service contract is not a cost of the location monitoring program; it is a separate commercial relationship the officer invented.

- **The timing is independently dispositive for everything that followed.** EDNC D.E. 76 governed release pending sentencing; it expired when sentence was imposed on September 23, 2025. The Judgment (EDNC D.E. 109) that replaced it contains **no location-monitoring condition and no phone condition of any kind.** So even if condition (q)(i) could be stretched to cover the April 2025 mandate during presentence release, nothing carried it into supervised release — yet the probation office maintained the requirement into 2026, through the period of D.E. 18, the officer's March 3, 2026 concession described below, and the findings of August 24. For that entire period the only possible source of authority would be a supervised-release condition that does not exist.

Nor can the directive be defended as an "implementation detail" of court-ordered monitoring. The directive imposed a new, cost-bearing, ongoing commercial obligation — not a time, place, or manner detail of an existing condition — and the monitoring program's own design never required it: supervision was later conducted for months through email, Zoom, and the defendant's father's telephone line, and the supervising officer confirmed "there's nothing that says that you are required to carry a cell phone." A directive that was never necessary to any court-ordered condition cannot be that condition's "detail" — and under § 3142(c)(1)(B)'s least-restrictive-condition command, necessity is the test. Whether any of these responses nonetheless carries the day is exactly the merits question this motion asks the Court to answer — and either answer must identify its source of authority.

**B. The defendant presented the authority question to the sentencing court, which declined to reach it on jurisdictional grounds**

In the Eastern District of North Carolina, the defendant squarely asked that court to determine whether Officer Ponton had authority to require a phone. His motion (EDNC D.E. 136, filed March 16, 2026) was captioned "Motion for Determination That Probation Officer Ponton's Cell Phone Mandate Exceeded Statutory Authority," and posed the narrow question: "Did Officer Ponton have statutory authority to require Defendant to obtain a cell phone?"

The EDNC court (Myers, C.J.) **denied that motion without prejudice, on jurisdictional grounds** — expressly because the defendant was by then supervised by this district. (EDNC D.E. 138, March 18, 2026.) The order made **no finding** on whether the requirement was statutorily authorized. The earlier EDNC ruling that this district recited in its own D.E. 45 (EDNC D.E. 126, Nov. 25, 2025) reached only the distinct request to bar the probation office from *contacting* the defendant by cell phone — not the requirement that he *obtain or possess* one.

The result: the sentencing court declined to reach the merits and pointed to the supervising district. This is the supervising district.

**C. The defendant presented the same question here, and it was left unruled as a "supplement"**

In this district, the defendant filed D.E. 18 (dated February 16, 2026), "Defendant's Motion for Authorization to Discontinue Cell Phone Service," raising the lack of statutory authority for the Ponton requirement. The Clerk docketed D.E. 18 as a "supplement to 17" rather than as a motion.

After Probation Officer Sabelka confirmed on March 3, 2026 that there was in fact no requirement to carry a cell phone, the defendant filed an **amended motion** (carried in D.E. 42, Attachment A), retitled "Defendant's Amended Motion for Court Order Confirming That Cell Phone Possession Is Not a Condition of Supervised Release and for Protective Relief," which supersedes D.E. 18 and narrows the relief to confirmation and protective relief.

The Court's written order, D.E. 45 (March 26, 2026), **declined to rule** on D.E. 18: "The Court likewise does not rule on any of defendant's other supplements or correspondence. (Docs. 2, 8, 12, 18, 19, 20)." At the March 18, 2026 status conference the Court addressed only the practical contact accommodation — "the probation office is happy to contact your father" — and took the motions "under advisement." No order has since adjudicated D.E. 18 or its amended version.

The need for an express ruling is confirmed by this Court's own recitation at the August 24, 2026 hearing. The Court there described the defendant's early filings — a list that expressly included "demanding removal of any cell phone service requirement for supervision" — as filings that Chief Judge Williams "**denied each of those motions** and requests, and those orders are found at dockets 21 to 29," and stated that Chief Judge Williams "issued a comprehensive order denying the collection of pro se motions." (Aug. 24, 2026 Tr. p.5:19-6:6, p. 6:19-20.) With respect to the cell-phone motion, that is not what the record shows: D.E. 18 was docketed as a "supplement," was not among the motions denied in the text orders at D.E. 21-29, and was expressly left unruled by D.E. 45. The recitation thus treats as denied a motion that was never adjudicated. The point is not blame — a judge arriving by designation reasonably took the docket's labels at face value. The point is that the record, as it stands, has induced the very court now presiding to believe the question was decided. Either D.E. 18 was a motion, in which case it was never ruled on and a ruling is owed; or it was not, in which case the question renewed in Part III of this motion is pending and unanswered. On either view, only an express adjudication corrects the record.

**Net:** the authority question was properly presented to the only two courts that could reach it. EDNC declined on jurisdiction and deferred to this district; this district left it unruled as a "supplement" — while the presiding judge's own recitation now describes it as denied. Neither court has decided it.

### D. There is no requirement to carry a phone — confirmed by probation itself

The premise of the dispute is not contested by the supervising officer. On March 3, 2026, USPO Hatrick confirmed: "there's nothing that says that you are required to carry a cell phone or keep a cell phone." The defendant proposed his father's telephone as the contact of record at intake on September 26, 2025, and restated it March 4, 2026; the officer accepted that accommodation and treated it as the standing contact channel through April 2026.

## III. THE QUESTION IS RENEWED AND PRESENTED IN THIS MOTION ITSELF

The defendant anticipates the argument that no pending filing any longer asks for a ruling on Officer Ponton's authority: that D.E. 18 was superseded by the amended motion in D.E. 42, that the amended motion narrowed its relief to confirmation and protection, and that the authority question was "taken back" to the sentencing district. The short answer is that the sentencing district sent it back here. EDNC D.E. 136 posed precisely this question — "Did Officer Ponton have statutory authority to require Defendant to obtain a cell phone?" — and EDNC D.E. 138 denied it **without prejudice**, on the sole ground that the defendant was no longer under the supervision of that court. A denial without prejudice for want of supervisory jurisdiction is an invitation to present the question to the court that has it. This motion accepts that invitation.

Accordingly, and independent of the procedural status of D.E. 18, **the defendant hereby renews and presents the question stated at the head of this motion.** No disposition of this motion can rest on the ground that the question is not pending: it is pending in this filing. If the Court concludes that D.E. 18 as amended no longer carries the authority question, this motion carries it. If the Court concludes D.E. 18 still carries it, this motion asks the Court to rule on it. Either way, the question is before the Court.

## IV. THE QUESTION IS LIVE

The August 24 judgment revoked supervised release and imposed 24 months' imprisonment with no supervision to follow (Aug. 24, 2026 Tr. p.48:16–19), so the Court may ask what remains to decide. Three things, each concrete and on this record:

**First, the Court itself made the question material on August 24, 2026 — and the resulting findings are now before the Eighth Circuit.** The revocation judgment (D.E. 182) is on appeal: a notice of appeal was filed August 27, 2026 (D.E. 183), and the appeal is docketed as *United States v. Welton*, No. 26-2732 (8th Cir.) (D.E. 185). At the final revocation hearing, the Court recited the defendant's filings as "demanding removal of . . . any cell phone service requirement for supervision" (Tr. p.5:19–6:6), and then resolved the phone question against the defendant as a matter of credibility, finding that "he doesn't have a phobia about phones, he just wants to control how he can be monitored." (Tr. p.45:22–46:6.) Those findings assume an answer to the question this motion presents: a defendant's resistance to an *unlawful* officer-created mandate is not evidence of evasiveness, and his request for adjudication of its legality was not a "demand" to escape supervision. The lawfulness of the underlying mandate is therefore embedded in findings the Court has already made and used. A question the Court has answered *implicitly, against the defendant, and to his detriment* is not moot; it is undecided in form while operative in fact. Adjudicating it expressly is the cure.

**Second, the protective relief sought in D.E. 18 and its amendment is forward-operating, and events have proven the need for it.** D.E. 18 asked the Court to order that the "lied about having a phone" narrative not be revived or relied upon in any future proceeding. At the March 18, 2026 hearing the phone matter was pronounced "resolved"; five months later, at the August 24 hearing, the same narrative returned as the foundation of an adverse credibility finding. And further proceedings in which the narrative could operate are not hypothetical: the August 24 record repeatedly contemplated a possible future indictment, and the Court recommended that its sentence "run consecutively to

any sentence that might later be imposed if defendant is, in fact, convicted of making threats against Chief Judge Williams or the U.S. Marshals, if those are ever charged against him." (Tr. p.48:21-25.) Relief against the revival of a narrative cannot be mooted by a pause in its use — least of all by a proceeding in which it was in fact revived, in anticipation of proceedings yet to come.

**Third, the question is capable of repetition as to this defendant — a possibility the Court itself entertained on the record.** At the August 24 hearing the Court asked the probation witness: "Do you believe Mr. Welton can be successfully supervised by the probation office **if supervision is reimposed**?" (Tr. p.20:20-22.) Any such future term — whether upon reversal of the revocation, upon reimposition after the custodial term, or otherwise — would be administered on the ground where every prior term was administered: by Iowa probation. Although the mandate's author was an EDNC officer, he never thereafter supervised the defendant; from the first day of presentence release onward, supervision was carried out by Northern District of Iowa officers (Schuette, Sturdevant, and then Hatrick and Sabelka under courtesy supervision and, from January 6, 2026, formal transfer). The office that enforced the requirement has never disclaimed the asserted power: the supervising officer's concession that "there's nothing that says that you are required to carry a cell phone" was an act of grace by one officer, not a ruling, and nothing prevents the requirement's reassertion by the next officer — which is precisely what happened once before, when an arranged non-phone accommodation was "switched over to a cell phone-based monitoring system because it's of the convenience for a new officer." (Tr. p.35:4-11.) The practical accommodation (contact through the defendant's father's number) addressed only *how* the probation office reaches the defendant; it did not and could not decide *whether* an officer may require him to obtain a phone.

## V. IF THE PENDING APPEAL LIMITS THIS COURT'S AUTHORITY, RULE 37 PROVIDES THE LAWFUL COURSE

To the extent the Court concludes that the question presented is so bound up with the August 24, 2026 revocation judgment (D.E. 182) — now under appellate review in *United States v. Welton*, No. 26-2732 (8th Cir.) — that the Court lacks authority to grant relief while the appeal pends, that conclusion is not a reason to leave the question unanswered. Federal Rule of Criminal Procedure 37(a) addresses exactly this posture: when "a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending," the court "may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37(a).

The defendant accordingly requests, in the alternative, an **indicative ruling under Rule 37(a)(3)**: a statement that the Court would grant the requested adjudication on remand, or that the motion raises a substantial issue. If the Court so states, the defendant will promptly notify the circuit clerk under Federal Rule of Appellate Procedure 12.1 as Rule 37(b) directs. What Rule 37 does not contemplate is silence: it assumes the district court will say *which* of its three options it is exercising, and why.

## VI. THE RECORD CONTRADICTS THE FACTUAL PREMISES THE COURT DREW FROM THE CELL-PHONE ISSUE

The defendant raises the following not to relitigate the August 24 ruling here, but to show that the cell-phone question carries unresolved factual disputes that a merits ruling on D.E. 18 would properly resolve.

### A. The phone-phobia history is documented, contemporaneously and pre-hearing

The Court's inference that the phobia was pretextual did not engage the record documenting it. The defendant's phobia dating to 2012-2015 appears in: his own allocution at the March 18, 2026 hearing; the Presentence Report's own

findings of "a phobia of ringing phones" arising from "a series of traumatic events between 2012 and 2015" (PSR ¶ 25), which the defendant placed before this Court as Exhibit F to D.E. 18 itself; and contemporaneous communications to his mental-health providers, including a January 29, 2026 message ("2012-2015 was chok-a-block full of this kind of tension . . . this is why i am terrified of doorbells, cell phones") and a July 16, 2025 message ("i have had a phobia of people calling me since 2015").

The pre-litigation character of the broader phone objection is corroborated by third parties in the record. Dr. Peter Kelly, a colleague of over a decade, attested (D.E. 18, Ex. A): "I have never known Eric to use a mobile phone. During the decade I've known him, he has always made it clear that if I need to contact him, it should be via email, slack, or other messaging apps, or - in an emergency - via his wife's phone number." Hunter Cain, who had known the defendant for seven years, attested that "Eric Welton has never owned or used a cellphone at any time during our acquaintance . . . well known by all of his friends/family." (D.E. 18, Ex. B.) This is not an allocution-day invention.

### B. The "four cell phones" inference is contradicted by the very PSR paragraph the Court relied on, and by the device forensics

The Court expressly rested the pretext inference on "the uncontested facts in paragraph 8 of his presentence report." (Tr. p.45:23–25.) But paragraph 8 states, in full: "WELTON denied having a phone; however, a subsequent search of his personal property produced 4 cellphones and a laptop. **A search of the devices revealed nothing of evidentiary value.**" (PSR ¶ 8.) The Court quoted the first clause and drew an adverse inference from the device count, but did not engage the paragraph's own closing finding — that the devices held nothing of evidentiary value. A person concealing phone use to "control monitoring" produces devices that show the hidden use; these showed nothing.

The device forensics, recounted in the defendant's sentencing addendum (EDNC Doc. 83) and corroborated by the sentencing memorandum (EDNC Doc. 71), convert the "four phones" point from inculpatory to exculpatory: none of the seized devices had a viable phone number or could make or receive calls; the

iPhone was so old it could not connect to any cellular network and was used for a Wi-Fi banking app; two devices were business point-of-sale units belonging to his wife's business (SIM cards not in his name), used after activation as backup cameras and restaurant tools; and even the one device that was "properly, a phone" had no live number and was used "almost exclusively, while traveling, as a wifi hotspot." The sentencing memorandum states the same independently ("Two of those phones were being retrofitted for Mr. Welton's restaurant to use as ordering devices"). D.E. 18 itself makes the same record: "two of the four devices were restaurant point-of-sale terminals (not phones), one was an obsolete iPhone without cellular capability, and one was a WiFi hotspot with a non-U.S. SIM card that could not receive calls," and "[w]hen asked for a contact number, he gave his wife's number - because he had no phone number to give." The device count the Court treated as proof of a missing phobia is, on the forensics, the physical signature of the non-use the defendant described.

The arrest-interview "denial" is likewise mischaracterized. Per the record, the defendant did not say "I have no phone"; he said he does not usually use a phone and volunteered two working contact numbers (his wife's and his daughter's), and provided agents his Skype information. A statement that offers the agent two reachable numbers is the antithesis of the concealment the "control the monitoring" and "non-compliance" findings require.

### C. The "control how he can be monitored" inference is, at best, one of two permissible readings

The record shows the defendant **accepted** a monitoring channel — scheduled/biometric reporting yielding identical compliance data — and objected only to the surprise-call mode; kept the phone off except to call the testing line; and made an explicit do-not-call request. His contemporaneous emails frame the ringing phone as an involuntary physiological trigger and log do-not-call requests. On the defendant's own account at the August 24 hearing, an accommodation for location monitoring that did not depend on a cell phone had been arranged with the supervising officer, and the friction arose only when, during that officer's absence, the office "switched over to a cell phone-based

monitoring system because it's of the convenience for a new officer." (Tr. p.35:4–11.) The defendant acknowledges the record also contains conduct a reader could characterize as objecting to the *mode* of monitoring (he sought to decommission the phone; he chose his carrier on expressive grounds); his point is not that the Court's inference is impossible, but that the Court stated one permissible inference as a settled fact — a dispute over a specific monitoring method that re-triggered a documented condition — against a record that supports the phobia-and-accommodation reading at least as well.

### D. The employment premise is contradicted by the controlling judgment

To the extent the cell-phone issue was folded into a broader finding that the defendant "refuses" the conditions of his release, the Court stated at the August 24 hearing that Judge Myers "anticipated that the defendant would have two years of good mental health treatment, of good substance abuse treatment, of living in the United States, of working a job in the United States. **Those were conditions that he imposed**, and that sentence of time served was contingent upon the defendant doing those things, and defendant refuses to do them." (Tr. p.47:6–13.) The controlling EDNC judgment (EDNC D.E. 109) imposes four special conditions — substance-abuse treatment, mental-health treatment, search, and no-contact — and contains **no U.S.-residence and no U.S.-employment condition**; Standard Condition 7 requires lawful full-time work of any type, not a U.S. job. Two of the four "conditions that he imposed" were, on the face of the judgment, never imposed. The defendant's active employment (a family farm-and-restaurant business operated remotely with his wife) is corroborated across the record. At the August 24 hearing, the proposition that he "refused to obtain any kind of job in the United States" was the Court's own question, affirmed by the witness — not an independent finding. (Tr. p.20:13–15.)

The phone-free character of that professional life is documented in the sentencing record itself. The defendant's sentencing addendum (EDNC Doc. 83, "On the Matter of the Phone") reproduces the published research positions of his consulting practice, authored in 2017 — "Reclusivity Rights" and "iFreedom –

Device Decoupling" — and his 2020 Decentralized Identity Foundation advocacy that "'device free lifestyles' should be accommodated," proposing identity designs that work "for people who don't have devices" in low-resource settings. The sentencing court acknowledged the same work: "you have been working on issues that would have potentially real beneficial impact on folks in the global south . . . to help those folks be able to get across borders and identify themselves. And you have real talent." (EDNC D.E. 135, Tr. 38:25–39:7.) That professional life runs through the defendant's two companies of record, Korsimoro LLC and Iiolonioro LLC (D.E. 19; D.E. 42, Ex. AN; D.E. 91), and it continued to the end: from April 27 to May 2, 2026, on travel approved by the probation office, the defendant attended Internet Identity Workshop 42 in Mountain View, California (D.E. 85 ¶ 5 & n.5; D.E. 121), where he presented his research on the captive-audience doctrine, cognitive liberty, and AI credential verification; on his return, per the record, his weekly work hours "have only increased." (D.E. 121.) Less than two weeks after that return, the first revocation proceedings began. (D.E. 71, 72, 75.) A documented, decade-long professional commitment to device-limited life is not a refusal to work; it is the work.

## VII. WHY A RULING IS NOW REQUIRED (AND WHY DECLINING TO RULE RAISES AN APPEARANCE CONCERN)

This section is offered in support of the relief requested — a ruling — not as a motion for disqualification.

A question that was properly presented, that goes to the lawfulness of a mandate affecting the defendant's profession, and that the sentencing court expressly deferred to this district, should not remain permanently undecided. When the Court has also **reopened** the subject and drawn adverse factual inferences from it — inferences the record contradicts, as shown in Part VI — the continued absence of a merits ruling on the underlying legality takes on a different character.

Section 455(a) provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," and §

455(b)(1) reaches "personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(a), (b)(1). The term "proceeding" expressly "includes pretrial, trial, appellate review, or other stages of litigation." *Id.* § 455(d)(1). The defendant does not move to disqualify. He raises § 455 for a narrower, forward-looking purpose: the surest way to foreclose any reasonable question about impartiality is for the Court to adjudicate the Ponton requirement on the merits. Where a court both declines to decide a properly presented legal question and relies on the subject matter of that question to a party's detriment — here, treating documented phobia and an unauthorized requirement as a bare wish to "control how he can be monitored," against a record that contradicts the inference (Part VI) — a reasonable observer could question whether the matter has been evenhandedly handled. Deciding the motion removes that concern; leaving it undecided while using it preserves it.

The Code of Conduct for United States Judges points the same way. Canon 3 directs that "[a] judge should perform the duties of the office fairly, impartially and diligently"; Canon 3A(2) that "[a] judge should hear and decide matters assigned, unless disqualified"; and Canon 3A(5) that "[a] judge should dispose promptly of the business of the court." The accompanying commentary explains that prompt disposition requires "due regard for the rights of the parties to be heard and to have issues resolved without unnecessary cost or delay." Code of Conduct for U.S. Judges, Canon 3A(2), (5) & cmt. (eff. Mar. 12, 2019). A motion left unruled as a "supplement" for more than seven months, through a change of presiding judge, and then revisited to the movant's detriment, is in tension with that standard. Ruling on it cures the tension.

The cleanest course — and the one that removes any such concern — is to **answer the question presented**. A ruling on the merits, in either direction, resolves the question, cures the procedural gap, and demonstrates adjudication rather than avoidance.

## VIII. RELIEF REQUESTED

WHEREFORE, the defendant respectfully requests that the Court enter an order:

**A. Primary relief — adjudication.**

1. ANSWERING the question presented: whether any statute or order of any court authorized Officer Ponton's April 9, 2025 directive that the defendant obtain and maintain, at his own expense, a cellular telephone and private cellular service contract;
2. If the answer is **no**: FINDING that the April 9, 2025 directive was imposed without statutory or judicial authority; FINDING that cellular-telephone possession was not and is not a condition of the defendant's release or supervision; and ORDERING that neither the directive, nor the defendant's objections to it, nor his truthful statements that he does not have a phone, shall be characterized as non-compliance, evasion, or deception in any proceeding;
3. If the answer is **yes**: IDENTIFYING with specificity the statute or court order that conferred the authority, so that the ruling may be reviewed.

**B. Alternative relief — indicative ruling.** If the Court concludes that the pending appeal deprives it of authority to grant the relief above, an INDICATIVE RULING under Fed. R. Crim. P. 37(a)(3), stating either that the Court would grant the requested adjudication on remand or that the motion raises a substantial issue.

**C. In any event — stated grounds.** If the Court disposes of this motion on any ground other than an answer to the question presented, a statement of that ground, so that the basis of the disposition is clear on the record.

## IX. CONCLUSION

A probation officer wrote a new condition of release onto a court form by hand. Two district courts have now been asked whether he had the authority to

do that; neither has answered. The sentencing court said the answer belongs to this district. The defendant respectfully requests that this Court give it.

Dated: October 7, 2026

Respectfully submitted,

**ERIC CHARLES WELTON**, Pro Se
51M3
Wiang Tai
Amphur Pai
Maehongson 58130
Thailand

Temporary Residence (For Supervision Purposes):
412 Meadow Lane
Charles City, IA 50616
Email: ewelton.general@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2026, I served the foregoing document by depositing a true and correct copy in the United States mail, postage prepaid, addressed to:

Jeremy R. Jehangiri
Assistant United States Attorney
United States Attorney's Office, District of South Dakota
P.O. Box 2638
Sioux Falls, SD 57101-2638

/s/ Eric Charles Welton
Eric Charles Welton, Pro Se

---

**NOTE REGARDING SERVICE AND FILING**

Pursuant to Fed. R. Crim. P. 49(a)(1), service is required on "every other party." The Clerk of Court is not a party. The original of this document was separately *filed* with the Clerk by deposit in the United States mail. The addresses listed above are parties upon whom courtesy copies were *served* via U.S. mail, in addition to the electronic service automatically generated by CM/ECF upon filing.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF IOWA, EASTERN DIVISION**

No. 6:26-CR-02003-SMR-SBJ

**UNITED STATES OF AMERICA,**

Plaintiff,

*v.*

**ERIC CHARLES WELTON,**

Defendant.

The Honorable Stephanie M. Rose
Chief United States District Judge, Southern District of Iowa, Sitting by Designation
Northern District of Iowa

---

# ORDER ON DEFENDANT'S MOTION FOR ADJUDICATION OF THE LAWFULNESS OF THE APRIL 9, 2025 CELL-PHONE MANDATE

---

Before the Court is Defendant's Motion for Adjudication of the Lawfulness of the April 9, 2025 Cell-Phone Mandate. Upon consideration of the motion and the record, the Court finds and orders as follows:

1. On April 9, 2025, United States Probation Officer Henry Ponton directed Defendant to obtain and maintain a cellular telephone, by handwritten notation on the PROB 61B GPS Participant Agreement. No order of any court imposed that requirement, and the Order Setting Conditions of Release (EDNC D.E. 76) and the Judgment (EDNC D.E. 109) contain no such condition.
2. Under 18 U.S.C. §§ 3143(a)(1) and 3142(c), conditions of release are imposed by the judicial officer, and "[t]he judicial officer may at any time amend the order to impose additional or different conditions of release." 18 U.S.C. § 3142(c)(3). The April 9, 2025 directive was the imposition of an additional condition of release by a non-judicial officer. It was therefore WITHOUT LAWFUL AUTHORITY.
3. Cellular-telephone possession was not a condition of Defendant's release or supervision at any time. Defendant's objections to the directive, and his truthful statements that he does not have a phone, shall not be characterized as non-compliance, evasion, or deception in any proceeding.

IT IS SO ORDERED.

*[Alternative ¶ 2, if the Court finds authority existed: "The April 9, 2025 directive was authorized by _________ (statute or order). The motion is DENIED on that ground."]*

*[Alternative, if the Court concludes the pending appeal bars relief: "Pursuant to Fed. R. Crim. P. 37(a)(3), the Court states that the motion raises a substantial issue / that it would grant the motion if the court of appeals remands for that purpose."]*

The Honorable Stephanie M. Rose
Chief United States District Judge, Southern District of Iowa, Sitting by Designation
Northern District of Iowa

Eric Charles Welton
412 Meadow Lane
Charles City IA 50616

10.10.26
ELB

Des Moines IA P&DC 500
SAT 10 OCT 2026 PM

XRAYED US MARSHALS SERVICE

Clerk of Court
111 Seventh Ave SE
Cedar Rapids IA 52401